JOSEFA OSORIO ETC., Plaintiff and Appellee, *v.* MANUEL
TABOADA, Defendant and Appellant.

No. 7098.    Argued March 12, 1937.—Decided March 11, 1938.

*J. Pedro Miranda* for appellant.    *Susoni & Defendini* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

There was evidence to justify the following facts, taken substantially from the opinion of the court:

"By deed of September 26, 1934, concerning the dissolution of a partnership and the creation of a new one, Manuel Taboada and R. Ríos García organized a partnership (*Sociedad Mercantil Regular Colectiva*) under the name of M. Taboada & Co., which was to do business in this locality, located at No. 55 Serra St., Santurce, and gave the deed retroactive affect to May 7, 1933, on which date the other partnership had come to an end. The purpose was, among

others, to enter into the business of purchase and sale of food products, vegetables, native and foreign fruits, sale of meats, fish, milk, etc. The administration and management of the company was equally entrusted to both partners (Plaintiff's Exh. A.) In the prior deed of the dissolved partnership, executed on October 11, 1930, it appears that said partnership had its domicile at that date at No. 41, Ernesto Serra St., Santurce. (Plaintiff's Exh. 13.)

"On or about January 13, 1934, there was an establishment by the name of 'Placita Taboada' at No. 55 Serra St., Santurce, P. R., the place where, according to the deed executed in September 26, 1934, the firm had its domicile. The defendant attempted to prove by the evidence that he introduced that the vegetable and meat market established in the aforesaid location was first owned by Rosario O'Neill, who died, and thereafter, by Pedro Soto, who is at present the chauffeur of M. Taboada & Co., until the month of May, 1934, on which date said partnership moved from its old domicile at 41 Ernesto Serra Street. However, the plaintiff offered documentary evidence from public archives, in addition to what appears from the partnership deed to show that on or about December 18, or 19, 1933, the Insular Inspector of Weights and Measures, Mr. Jorge Biascoechea, inspected the scales of the market located at 55 Ernesto Serra Street, Santurce, owned by merchant Manuel Taboada and M. Taboada & Co. (Plaintiff's Exh. C); and that on or about December 29, 1933, M. Taboada & Co. requested a permit from the Health Department to establish a business that was to be owned by E. Taboada & Co.; and that after the premises had been inspected by Jesús Perelló, Chief Health Inspector, on that date, license No. 472 was issued to it. (Plaintiff Exh. D).

"From the evidence introduced the court considers proved that on or about January 13, 1934, when the facts that gave rise to this complaint occurred, the vegetable and meat market named 'Placita Taboada', that was located at 55 Serra Street, Santurce, belonged to the mercantile firm M. Taboada & Co. (*sic*). The partnership also had another grocery business at 41 Ernesto Serra St., Santurce. Manuel Taboada acted as owner, head, and as the one who gave orders at the vegetable and meat market, according to the testimony of Carmelo Vega, and he, Taboada, was there when the accident occurred. This was not true of Rufino Ríos García, and it seems natural that as to those persons not related to the partnership, the establishment should be considered as belonging entirely to Manuel Taboada alone.

"In the establishment of M. Taboada & Co. there was a large yellow and black dog. It was admitted during the trial that the dog was a fierce one. During the daytime they had it tied with a chain in the rear of the establishment. The animal was considered in the neighborhood as the property of Manuel Taboada. On or about January 13, 1934, between seven and eight at night, Josefa Osorio and her minor daughter, Pilar Cobián, 18 years of age, while walking on the sidewalk on the right hand side of the street, in front of the aforesaid establishment, were suddenly attacked by the aforesaid dog that came out from the store dragging the chain. Pilar Cobián was bitten five times, in the arm, in the hand, in the stomach, and in the chest. The dress was torn to pieces and she was thrown down. Josefa Osorio was only bitten in the shin of her right leg. At the same time clerk Alberto Rodríguez and Manuel Taboada came out from the establishment. The first one grabbed the dog and took him into the shop and the latter, that is Manuel Taboada, told Pedro Soto, the chauffeur, to take the injured persons to an emergency room, and further stated that the dog should not be kept without a muzzle because it was going to get him into trouble. Pedro Soto used an automobile to do as he was told. Minor surgeon Juan Marrero of the Santurce Emergency Room, located at Stop 17, Santurce, cured Pilar Cobián that very night of the wounds suffered on account of the dog bites and injected her with antitetanic serum for which Manuel Taboada paid $2, through the chauffeur. The minor surgeon did not cure Josefa Osorio that night but did it on the following day inasmuch as her wound was very slight. Pilar Cobián was taken to her home that same night while Josefa Osorio returned to the establishment and to Manuel Taboada to see if he would help them out, and said lady testified that he refused to do it telling her that the dog did not belong to him. After these facts occurred and after the injured persons had been taken to the emergency room, insular policeman Fidel Franco intervened, who testified that he made an investigation and on February 19, 1934, that is one month and 5 days later, filed a complaint against Alberto Rodríguez charging him with owning a dog without having the necessary license, thus violating Municipal Ordinance No. 92 of San Juan. The defendant pleaded guilty without a trial on March 20, 1934, and was ordered to pay a fine.

"The evidence has further shown that Josefa Osorio was unable to work for two months—she washed and ironed clothes—because her wound became infected, and she showed the scar on her leg; and

that Pilar Cobián was kept ten days at a municipal hospital because of the injuries received, and she testified that one of the bites touched one of the nerves on her right hand which rendered her unable ·to close it properly.''

The court rendered judgment for the plaintiff giving the mother $100 and the daughter $300.

█ Assignments of error Nos. 1, 2, 3 and 4 relate to evidence admitted by the court with respect to the owner of the establishment from which the dog came forth. We are inclined to agree with the discussion of these errors made by the appellee, but even if all the evidence was erroneously admitted, there is enough in the record to justify the finding that Manuel Taboada was in possession or control of the establishment, so that the admission of the evidence was harmless.

█ We think the court committed no error in admitting a certificate from the Chief of the Bureau of Weights and Measures referring to other certificates made by an inspector from that Bureau which tended to show ownership and control of the shop in the defendant. The application for a license was made by M. Taboada & Co., of which Manuel Taboada was a managing partner (socio gestor) if not the sole managing partner. Such application was admitted without objection.

█ The sixth assignment relates to an amendment to the complaint allowed by the court during the course of the trial. With regard to this, the court said:

''The amendment thus consisted in alleging that the establishment was owned by Manuel Taboada & Co., instead of by Manuel Taboada, and in adding that the dog was in possession or under the control of the defendant, which left in the complaint the allegation as to the ownership of the animal. The amendment was allowed in order to conform the pleadings to the evidence since it did not at all change the legal issue initially raised; did not constitute a new cause of action, and there was not the slightest reason for thinking that it might be prejudicial to the defendant. *Oronoz* v. *Román,* 26 P.R.R. 22, *Mongil* v. *Castro,* 19 P.R.R. 650. After the amendment

was allowed, with due consideration, by the court, of the liberal tendency which exists in this regard, the court gave the defendant an opportunity to introduce new evidence to support any other of his defenses, of which he made no use. The contention of the defendant was, after introducing evidence to that effect, that the establishment at 55 Serra Street was owned by Pedro Soto at the time of the accident and that the dog was owned by and was in the possession of Alberto Rodríguez, for which reason the amendment could not be prejudicial to him in any sense. We affirm the decision allowing the amendment.

■■ The seventh assignment of error attacks the sufficiency of the evidence to meet the first cause of action, or namely, the fact of the accident or the bites of the dog. We find it fully sufficient, as set forth by the court.

The court rendered judgment for the plaintiff without excluding attorney's fees. We find no error in this exercise of discretion. This disposes of the eighth assignment of error.

The ninth assignment of error reads:

"The trial court erred because the judgment rendered is contrary to the law."

We agree with the appellee that it was not necessary to prove that the dog belonged to M. Taboada & Co. It was sufficient to show that the establishment belonged to that firm and that Manuel Taboada was in possession and control of both the establishment and the dog.

Section 1805 of the Civil Code (1930 ed.) provides as follows:

"The possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

Section 1803 of the Civil Code has no bearing, and the case is governed by our decision in *Torres* v. *Dávila*, 47

P.R.R. 298. Likewise it makes no difference that the accident occurred outside of the establishment of M. Taboada & Co., if, as found by the court, the animal was within the control of the defendant. No one could read the evidence without having a clear conviction, from the statements of the witnesses and the acts of the defendant, that the latter fell within the provisions of the statute.

The tenth assignment of error maintains that the judgment was against the weight of the evidence. We find to the contrary. There was even an admission by the defendant that the dog was a "fierce animal" (fiera).

Judgment affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.